UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JUAN PINZON and JAQUELINE ESPITIA,

        PlaintiffS,

-vs-                                           Case No. 5:12-cv-636-Oc-10PRL

THE FIRST LIBERTY INSURANCE CORPORATION,

        Defendant.
_____/

## **O R D E R**

This is an action for breach of contract arising out of a homeowners insurance policy issued by the Defendant The First Liberty Insurance Corporation ("First Liberty") to Plaintiffs Juan Pinzon and Jaqueline Espitia (the "Insureds"). The Insureds contend that their property suffered damages consistent with sinkhole activity, that such damage is a covered loss under the policy, and that First Liberty has refused to pay benefits for the loss as required by the policy.

The Insureds originally filed their Complaint in state court in Marion County, Florida (Doc. 2). First Liberty removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441(a) (Doc. 1), and subsequently filed a counterclaim for declaratory judgment (Doc. 4). First Liberty seeks a declaration that the terms of the insurance policy do not cover any of the damages claimed by the Insureds.

First Liberty has filed a Motion for Summary Judgment on its Counterclaim (Doc. 15), to which the Insureds have filed a timely response in opposition (Doc. 17). The issue presented by the motion is whether the Court should apply the statutory definition of "structural damage" contained in Fla. Stat. § 627.706(2)(k) (2011) to the term "structural damage" as it is used in the insurance policy. There appears to be no dispute that Florida law governs the interpretation and enforcement of the insurance policy.

Upon due consideration, the Court concludes that First Liberty's motion is due to be Granted.

## Undisputed Material Facts

### I. The Policy

The Insureds are owners of a residence located at 3521 Northeast 28th Terrace, Ocala, Marion County, Florida, 34479. First Liberty issued a homeowners insurance policy, number H36-28-742815-401-0 (the "Policy") to the Insureds, with an effective term of June 9, 2011 through June 9, 2012. The Policy provides coverage for, among other things, Sinkhole Losses as follows (Doc. 15-1, p. 30):

SECTION I - PERILS INSURED AGAINST

The following perils are added:

**Sinkhole Loss**

a.  Sinkhole Loss means structural damage to the building, including the foundation, caused by sinkhole activity.

> Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.
>
> > (1) We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you.
>
> b. Sinkhole Activity means settlement or systematic weakening of the earth supporting such property only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on limestone or similar rock formation.
>
> The SECTION I - Earth Movement exclusion does not apply to this peril.

The Policy nowhere defines the term "structural damage," and does not reference any statutory or other external definitions of the term.

## **II.** **The Claim**

On January 9, 2012, the Insureds made a claim for sinkhole loss for damage to their home. They listed a date of loss of November 1, 2011. As required by the Florida Insurance Code, Fla. Stat. Ch. 627, First Liberty retained a professional engineer, Florida Geotechnical Engineering ("FGE"), to inspect the Insureds' property and home, conduct a structural evaluation, test for a sinkhole on the property, and prepare a report verifying both whether any structural damage occurred, and if so, whether the structural damage was caused by sinkhole activity. Fla. Stat. §§ 627.7072-627.7073. FGE issued a report concluding that:

> Based on the investigation results and data presented herein and in our professional opinion, none of the damage at the Pinzon & Espitia residence are structural damage as defined by the Florida Statutes. The damages are the result of minor differential settlement, the expansion and contraction of building materials, and normal shrinkage of cementitious building materials. (Doc. 15, p. 2).

Based on FGE's report, First Liberty denied the Insureds' claim both on the basis that the Policy does not cover damage for settling, bulging, or expansion of the property and building materials, and because there was no indication of any structural damage to their home. This lawsuit followed.

## **The Legislative History of Florida's Sinkhole Statute**

From 1981 through 2004, Fla. Stat. § 627.706(1) required that insurers make coverage available for sinkhole loss. Bay Farms Corp. v. Great American Alliance Ins. Co., 835 F. Supp. 2d 1227, 1230–33 (M.D. Fla. 2011) (citing Fla. Stat. § 627.706). During that time, the definition of "sinkhole loss" incorporated the definition of "sinkhole" and meant "actual physical damage to the property covered arising out of or caused by sudden settlement or collapse of the earth supporting such property only when such settlement or collapse results from subterranean voids created by the action of water on a limestone or similar rock formation." Id.; Fla. Stat. § 627.706(3). Additionally, the statute contained a separate definition of the term "loss" as "structural damage to the building." Id.; Fla. Stat. § 627.706(2).

In 2005, the Florida Legislature redefined a "sinkhole loss" as "structural damage to the building, including the foundation, caused by sinkhole activity." Bay Farms, 835

F. Supp. 2d at 1230; 2005 Fla. Sess. Law. Serv. Ch. 2005-111, § 17. The 2005 definition incorporated the previous definition of the term "loss" and that term was removed from the statute. Bay Farms, 835 F. Supp. 2d at 1230. The 2005 version also added definitions for other terms such as "sinkhole" and "sinkhole activity." Id. A separate definition for the term "structural damage" was not included. Id.

In 2011, the Legislature, for the first time, adopted a five-part definition of "structural damage" to be applied when interpreting insurance policies providing coverage for sinkhole losses. See 2011 Fla. Sess. Law. Serv. Ch. 2011-39, § 22. The 2011 Amendment went into effect on May 17, 2011, pursuant to the Enabling Act. As amended, § 627.706 provides:

> (2) As used in ss. 627-706-627-7074 and as used in connection with any policy providing coverage for catastrophic ground cover collapse or for sinkhole losses, the term:
>
> (j) "Sinkhole loss" means structural damage to the covered building, including the foundation, caused by sinkhole activity. Contents coverage and additional living expenses apply only if there is structural damage to the covered building caused by sinkhole activity.
>
> (k) "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:
>
>> 1. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117–90 or the Florida Building Code, which results in settlement-related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;
>>
>> 2. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318–95 or the Florida

> Building Code, which results in settlement-related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;
>
> 3. Damage that results in listing, leaning, or buckling of the exterior load-bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;
>
> 4. Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or
>
> 5. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

The 2011 Amendment indirectly modified the definition of "sinkhole loss" by adding a new and highly technical definition for the previously undefined term "structural damage." This amendment attempts to resolve the legislature's "concern [ ] about the impact the growing number and the severity of sinkhole insurance claims had on Citizens Property Insurance Corporation and the private insurance market." Gonzalez v. Liberty Mutual Fire Ins. Co., No. 8:12-cv-2549-T-23EAJ, 2013 WL 5183810 at *8 (M.D. Fla. Sept. 3, 2013) (quoting Bay Farms, 835 F. Supp. 2d at 1232).

-6-

In other words, the Florida Legislature sought to reduce the number of sinkhole loss claims by narrowly defining the term "structural damage."

## **Summary Judgment Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying this standard, the Court must examine the materials on file and the record evidence "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit"

and must be "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S. Ct. at 2510.

## **Discussion**

The Parties appear to agree that the denial of the Insureds' claim hinges, in large part, on the definition of the term "structural damage." The Parties further agree that this term is nowhere defined in the Policy. The Insureds contends that because this term is undefined, the Court should employ standard tenets of insurance contract interpretation and give "structural damage" the broadest possible interpretation to ensure coverage. First Liberty asserts that the narrow definition of "structural damage" contained in § 627.706(2)(k) governs the Policy, because this statutory provision was enacted approximately 23 days before the Policy went into effect, and insurance contracts incorporate valid laws in existence at the time a contract is executed.

Interpreting a term in an insurance contract is a question of law that the Court may resolve at the summary judgment stage. See Technical Coating Applicators, Inc. v. U.S. Fidelity and Guar., Co., 157 F.3d 843 (11th Cir. 1998); Bedoya v. Travelers Property Cas. Co. of America, 773 F. Supp. 2d 1326 (M.D. Fla. 2011); DEC Electric, Inc. v. Raphael Construction Corp., 558 So. 2d 427 (Fla. 1990). The fact that a term in a policy is not expressly defined does not automatically create an inherent ambiguity that must be interpreted in favor of the insured. Under Florida law, when an insurance policy provision is not defined, a court should construe the undefined term according

to the meaning a person of ordinary intelligence would reasonably give it. Spinx Intern., Inc. v. Nat. Union Fire Ins. Co., 412 F.3d 1224 (11th Cir. 2005); Pacific Employers Ins. Co. v. Wausau Business Ins. Co., 508 F. Supp. 2d 1167 (M.D. Fla. 2007). See also Swire Pacific Holdings, Inc. v. Zurich Ins., Co., 845 So. 2d 161, 165 (Fla. 2003) ("The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts.") (internal citations omitted); Nateman v. Hartford Cas. Ins. Co., 544 So. 2d 1026, 1028 (Fla. 3d Dist. Ct. App. 1989) ("[W]hen a policy provision remains undefined, common everyday usage determines its meaning.").

Numerous Florida courts have applied these tenets to insurance policies covering sinkhole losses and broadly interpreted the term "structural damage" to mean "damage to the structure."[1] These cases, however, all interpreted "structural damage" prior to the enactment of the 2011 amendment to Fla. Stat. § 627.706(2)(k), and are neither persuasive nor binding precedent with respect to the dispute now before the Court.

---

[1] See e.g., Cioffi v. USAA Cas. Ins. Co., No. H-27-CA2010-1427 (Fla. 5th Cir. Ct. May 17, 2011); Bissell v. United Serv. Auto. Ass'n, No. 51-2010-CA-008524 (Fla. 6th Cir. Ct. Apr. 20, 2011); Ramirez v. Homewise Preferred Ins. Co., No. 10-013685 (Fla. 13th Cir. Ct. Feb. 18, 2011); Austin v. USAA, No. 08-10190 (Fla. 13th Cir. Ct. Aug, 16, 2010); Manso v. United Serv. Auto Ass'n, No. 08-05173 (Fla. 6th Cir. Ct. Mar. 2, 2010). See also Ayres v. USAA Cas. Ins. Co., No. 8:11-cv-816-T-24-TGW, 2012 WL 1094321 (M.D. Fla. Apr. 2, 2012) (claim and insurance policy both pre-dated 2011 amendment, and district court focused solely on the general Florida law concerning contract interpretation; there was no mention of the 2011 amendment).

In support of their position, the Insureds have cited to several decisions where courts have considered the application of § 627.706(2)(k), and refused to apply that narrow definition of "structural damage" to insurance policies similar to the present Policy. However, these decisions, which continued to define "structural damage" as "damage to the structure," are also inapposite to the present case. Unlike the Policy before the Court, these decisions involved insurance policies that were executed and operational <u>before</u> the 2011 amendment was enacted.[2] The decisions the Insureds cite rejected the 2011 amendment because it would have been applied retroactively to a pre-existing insurance contract. These and other courts faced with similar facts[3] uniformly and correctly held that the amendment should not be applied retroactively, because "[n]arrowing the scope of insurance coverage for sinkhole losses in a contract that predates the amending legislation violates Florida and federal constitutional principles." Hegel v. First Liberty Ins. Co., No. 8:12-cv-1161-T-17MAP, 2013 WL 4781061 at * 15 (M.D. Fla. Sep. 6, 2013). "The Supreme Court of Florida has repeatedly recognized that 'subsequent legislation which diminishes the value of a

---

[2]See Garcia v. First Liberty Ins. Co., No. 8:12-cv-771-T-30TGW, 2012 WL 5328660 (M.D. Fla. Oct. 29, 2012); Zawadzki v. Liberty Mut. Fire Ins. Co., No. 8:12-cv-950-T-30MAP, 2012 WL 3656456 (M.D. Fla. Aug. 23,, 2012); Glowacki v. Liberty Mut. Fire Ins. Co., No. 8:12-cv-2422-JSM-TGW (M.D. Fla. Dec. 13, 2012).

[3]The decisions referenced by the Insureds comport with several other state and federal decisions which also refused to retroactively apply the 2011 amendment's definition of "structural damage. See e.g., Jackson v. USAA Cas. Ins. Co., No. 10-13586 (Fla. 13th Cir. Ct. July 5, 2011); Cunningham v. Liberty Mut. Fire Ins. Co., No. 8:12-cv-1398-MSS-TBM (M.D. Fla. May 29, 2013); Bay Farms, 835 F. Supp. 2d 1227; Leon v. First Liberty Ins. Corp., No. 8:12-cv-1613-T-30MAP, 2012 WL 5417294 (M.D. Fla. Nov. 6, 2012).

contract is repugnant to [the Florida] Constitution.'" Bay Farms, 835 F. Supp. 2d at 1241 (quoting Dewberry v. Auto-Owners Ins. Co., 363 So. 2d 1077, 1080 (Fla. 1978)). There are no such retroactivity concerns in this case.

The Court has been unable to identify any state or Eleventh Circuit precedent addressing the precise issue before the Court – whether Fla. Stat. § 627.706(2)(k) applies to an insurance contract that went into effect after the amendment's enactment date. It appears to have been addressed by only two courts within this Circuit. In an April 17, 2013 unpublished decision, my colleague Judge Moody found that §627.706(2)(k)'s definition of "structural damage" would not apply to an insurance policy where the policy did not define the term "structural damage" and did not reference or cite to the 2011 amendment. Shelton v. Liberty Mutual Fire Ins. Co., No. 8:12-cv-2064-T-30AEP, 2013 WL 1663290 (M.D. Fla. April 17, 2013). Judge Moody held that even though the 2011 amendment was in effect before the inception of the insurance policy "it is inappropriate to look to other definitions outside the insurance policy if the Court can apply a plain meaning to the undefined phrase." 2013 WL 1663290 at * 3.

In another unpublished decision from this District issued on June 12, 2013, Judge Kovachevich adopted Judge Moody's decision in Shelton and similarly held that an insurance policy issued after the enactment of the 2011 amendment would not follow the amendment's more narrow definition of "structural damage." Kittusamy v. First Liberty Ins. Co., No. 8:12-cv-2018-EAK-TBM (M.D. Fla. June 12, 2013). Judge

Kovachevich concluded that because the insurance policy did not define "structural damage" or reference § 627.706(2)(k), the plain meaning definition of "damage to the structure" would apply.

The Court respectfully differs from the conclusions of Judges Moody and Kovachevich and finds, based on this Circuit's precedent and the law of Florida that the definition of "structural damage" contained in § 627.706(2)(k) should and will apply to the Policy in this case.

"It is fundamental that the laws of Florida are a part of every Florida contract." Department of Ins., State of Fla. v. Teachers Ins. Co., 404 So. 2d 735, 741 (Fla. 1981) (citing Board of Public Instruction v. Town of Bay Harbor Islands, 81 So. 2d 637 (Fla. 1955)). With respect to insurance contracts in particular, "it is generally accepted that the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract." Hassen v. State Farm Mut. Auto. Ins. Co., 674 So. 2d 106, 108 (Fla. 1996) (citations omitted).[4] See also Lumbermans Mut. Cas. Co. v. Ceballos, 440 So. 2d 612, 613 (Fla. 3d Dist. Ct. App. 1983) ("[i]t is well settled in Florida that the statute in effect at the time the insurance contract is executed governs any issues arising under that contract."). The Eleventh Circuit has recognized this doctrine, holding that "[w]e recognize . . . that under Florida law, applicable

---

[4]Several courts have held that Fla. Stat. § 627.706(2)(k)'s definition of "structural damage" is a substantive legal issue. See, e.g., Bay Farms, 835 F. Supp. 2d at 1236-38; Zawadzki, 2012 WL 3656456 at ** 5-6.

statutory regulations surrounding insurance contracts in effect at the time the contract is formed are deemed by law to be incorporated into the contract." Sherman v. Transamerica Life Ins. Co., 475 Fed. Appx. 733, 735, 2012 WL 1888147 at * 2 (11th Cir. May 25, 2012) (citing Auto-Owners Ins. Co. v. DeJohn, 640 So. 2d 158, 161 (Fla. 5th Dist. Ct. App. 1994)). See also Metropolitan Life Ins. Co. v. Fugate, 313 F.2d 788 (5th Cir. 1963) ("An insurance policy is a contract. The [Florida] statute would only apply to insurance policies issued subsequent to the effective date of the statute. . . .").[5] The Policy in this case became effective on June 9, 2011, some 23 days after the enactment of the 2011 amendment. Thus, under this binding precedent, the 2011 amendment defining "structural damage" set forth in § 627.706(2)(k) is incorporated within the Policy as a matter of law.

The Florida Insurance Code itself provides further support for this conclusion. The Florida Legislature has crafted an extensive and broad regulatory scheme governing the creation, execution, enforcement, and interpretation of insurance contracts, including insurance policies covering sinkhole losses. See Fla. Stat. Ch. 627. Florida Statute § 627.418(1) expressly provides that any insurance policy that is otherwise valid but contains a provision not in compliance with the requirements of the Insurance Code must be harmonized with the Code. In other words, all terms and

---

[5]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit announced prior to October 1, 1981. Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

provisions of insurance contracts executed in Florida must comply with the Insurance Code, or will deemed to have been modified to be in compliance. Thus, to the extent the Policy does not define "structural damage," § 627.418(1) would pro forma modify the Policy to include the definition contained in § 627.706(2)(k). More importantly, the Florida Legislature specifically stated that the definition of "structural damage" contained within § 627.706(2)(k) applies to all insurance policies providing sinkhole loss coverage. Fla. Stat. § 627.706(2) and (2)(k) ("[A]s used in connection with any policy providing coverage for a catastrophic ground cover collapse or for sinkhole losses, the term: . . . (k) 'Structural damage' means. . . ."). The Florida Insurance Code could not make it more clear that the definition of "structural damage" set forth in the 2011 amendment applies to insurance policies covering sinkhole losses, including the present Policy.

In sum, the Court concludes that the applicable statutes and case precedent dictate that the 2011 amendment to Fla. Stat. § 627.706 establishing a definition of "structural damage" applies to the Policy and governs this case. And while the Insureds argue that "[t]here is no indication in the record that at the time the relevant policy was executed the Insureds contemplated or bargained for the highly technical definition of structural damage adopted by the Florida Legislature in 2011," (Doc. 17, p. 10), the lack of such record evidence is irrelevant. It is axiomatic that "contracts are made in legal contemplation of the existing applicable law." Southern Crane Rentals, Inc. v. City of Gainesville, 429 So. 2d 771, 773 (Fla. 1st Dist. Ct. App. 1983). In this

case, § 627.706(2)(k) went into effect before the effective date of the Policy. The Insureds are presumed to have been aware of the law. Stated differently, ignorance of the law is no excuse or defense. See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 581, 130 S. Ct. 1605, 1611 (2010) ("We have long recognized the 'common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally.'") (quoting Barlow v. United States, 7 Pet. 404, 411, 8 L.Ed. 728 (1833)); McKissack v. Swire Pacific Holdings, Inc., No. 09-22086-Civ, 2010 WL 3701577 at * 4 (S.D. Fla. Sept. 15, 2010).

## **Conclusion**

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1) The Defendant The First Liberty Insurance Corporation's Motion for Summary Judgment (Doc. 15) is GRANTED. The definition of "structural damage" contained in Fla. Stat. § 627.706(2)(k), as enacted on May 17, 2011 defines the term "structural damage" as it is used in the homeowners insurance policy, number H36-28-742815-401-0, with an effective term of June 9, 2011 through June 9, 2012.

(2) It is not clear from the record whether the Court's determination of the definition of "structural damage" necessarily resolves a "controlling question of law" within the meaning of 28 U.S.C. § 1292(b). Therefore, within twenty (20) days from the date of this Order, the Parties are directed to confer and to file a notice with the Court stating their position(s) with respect to whether it would be appropriate for the Court to

certify an interlocutory appeal and to stay the case pending the outcome of such appeal.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 30th day of September, 2013.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy